Charles J. Enoch v. Commissioner. Mary Enoch v. Commissioner.
Enoch v. Commissioner
Docket Nos. 35264, 35265.
United States Tax Court
1953 Tax Ct. Memo LEXIS 105; 12 T.C.M. (CCH) 1085; T.C.M. (RIA) 53316; September 25, 1953
*105 The petitioners are held to have carried on the business of the Enoch Packing Company during the taxable years 1943 to 1946, inclusive, as a joint partnership with their son, and the one-half of net earnings of the business paid or credited to the son in each of those years represented partnership earnings to which the son was entitled and not income taxable to petitioners. Valentine Brookes, Esq., 1720 Mills Tower, San Francisco, Calif., for the petitioners. Leonard A. Marcussen, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent has determined deficiencies in income tax and fraud penalties as to the petitioner Charles J. Enoch for the taxable years and in amounts as follows: Year
Tax
Penalty
1943
$18,155.33
$ 9,077.67
1944
72,547.46
36,273.73
1945
88,039.07
44,019.54
1946
14,313.52
7,156.76
Respondent has determined deficiencies in income tax as to the petitioner Mary Enoch for the years and in amounts as follows: Year
Tax
1944
$77,086.30
1945
88,039.07
1946
14,313.52
Both cases involve claims for increased deficiencies for the year 1945 asserted by *106 respondent in amendments to his answers. All of the taxable years involved are fiscal years ending July 31, of each year. Petitioners claim an overpayment of $17,670.74 for the fiscal year 1945. Certain adjustments made by the respondent are not contested by petitioners. Certain of the issues, including fraud, have been eliminated by stipulation and confession of error by respondent on brief. There remains for consideration: (a) the issue as to whether or not petitioners' son was a bona fide partner in the raisin growing and packing business in any of the taxable years 1943 to 1946, inclusive, and, (b) if not found to have been a partner, whether the share of profits from the operation of such business paid or credited to him in the taxable years 1943 to 1946, inclusive, represented compensation for services and, as such, was in excess of a reasonable amount for the services rendered. Findings of Fact These proceedings have been consolidated for hearing and decision. Certain of the facts were stipulated and are included herein by reference. Other facts hereinafter recited in addition to those stipulated are found upon evidence introduced on the hearing. The petitioners, Charles *107 J. Enoch and Mary Enoch, are husband and wife, residents of Del Ray, California, and have for many years prior to 1942 owned as community property and operated a raisin growing and packing business under the name of Enoch Packing Company. Their returns for the years here involved were filed with the collector for the first district of California. They have two children, Charles J. Enoch, Jr., and Violet Enoch Vartan. Petitioners' son, Charles J. Enoch, Jr., worked in the vineyards before and after school and during vacation from the time he was sevenor eight years of age. By the time he was in high school he was entrusted with the employment of crews and the supervision of the operations in the packing plant as well as those involved in the irrigation, cultivation and harvesting of the crop from the vineyards. On completing high school the son entered Fresno State College, which was only ten miles from the home he occupied with petitioners, and during his college course he continued his active work in the business and his responsibilities increased. During this time he was able to devote more time to the work than during his high school days. Just prior to the start of the final *108 semester in college, at the conclusion of which in June 1939 he would receive an A.B. degree, the petitioner Charles Enoch, hereinafter referred to as the petitioner, approached his son with the inquiry as to what his plans for the future were, and urged him to decide to stay in the business with him and after a few years further experience to become a full partner in the enterprise. The son had contemplated a law course but on his completion of his college course in June 1939 he advised his father that he had decided to remain with the business. He thereupon devoted his entire time to the business of Enoch Packing Company, devoting all hours to his work and with the idea of improving the plant and the quality of its product. From this time forward the son was in complete charge of the operations of the vineyards, together with the operation of the packing plant in its curing, bleaching, stemming and packing of the product for sale. The activities of the petitioner after this time were confined to the office and handling matters of sales and purchases. Just prior to 1942 petitioner was approached by his son and requested to carry out the understanding as to his admission to the *109 business as a full partner. He pointed out that he had had the additional experience, had married, and he and his wife were expecting a child, and that he considered that under the arrangement made he was entitled then to the partnership interest agreed upon. To this request by the son petitioner agreed and phoned a lawyer who looked after the legal affairs of the business, advising him that his son was being taken into the business, and requested him to draw a contract to meet the situation. Neither the petitioner nor his son were lawyers or possessed knowledge of legal necessities. The petitioner is Armenian by birth and was brought to this country as a small child. As a result of the direction given the attorney, the latter drew a contract, and petitioner and his son called at the office of the attorney during the latter's absence and signed the contract without explanation as to the effect of its terms. The contract read as follows: "THIS AGREEMENT made and entered into this 1 day of January, 1942, by and between CHARLES J. ENOCH, SR. and MARY ENOCH, his wife, first parties, and CHARLES J. ENOCH, JR., second party, "WITNESSETH: "That WHEREAS first parties are the parents *110 of second party, and "WHEREAS first parties are the owners of a certain packing house and dehydrator located at Del Ray, California, and have been engaged in the business of buying and selling dried fruits and raisins for some time, and "WHEREAS said first parties are desirous of having their son, second party, engage in said business and relieve Charles J. Enoch, Sr., first party, of some of his duties in managing said packing house and dehydrator, and in supervising the ranches owned by said first parties: "That WHEREAS said second party has been desirous of severing his business connections with first parties and of commencing his own business and buying his own ranches, and first parties are reluctant to have him leave and offer him the following inducements to stay, and second party accepts, "It is AGREED as follows: "Second party is to give his complete time to the supervision of said packing house and dehydrator and also to the management of said ranches for the benefit of first parties and under the direction of first parties. "In consideration of second party's devoting his entire time and attention to said business, second party shall receive as compensation therefor *111 one-half of the net profits that may result from the operation of said packing house and dehydrator and the said ranches, said net profit to be determined by an audit of the books every year. "It is Understood and AGREED that second party shall draw a monthly salary of $150.00 per month, which monthly salary shall be deducted from any and all sums he may receive as his one-half share of profits. "It is Understood and AGREED that Charles J. Enoch, Sr., first party, may draw such salary as he may deem advisable from time to time, not to exceed $500.00 per month, and such salary shall be deducted before the net profits are determined. "It is UNDERSTOOD that this agreement may be terminated by first parties on January 1 of any one year by giving thirty days written notice to second party thereof. "In the event second party should cease working for first parties against first parties' wishes, second party is only to receive the sum of $150.00 per month during the calendar year for which he worked and not be entitled to one-half of the profits." Following the execution of this contract the bank with which the Enoch Packing Company did business was given to understand that a partnership *112 existed between petitioner and his son, and this information was also given to the various parties with which the packing company did business both in selling their product and in buying supplies and equipment. During the years here in question loans were procured from the bank by the Enoch Packing Company approximating $800,000 on notes signed by the petitioner and his son. In some instances the loans were secured on notes signed by the son alone. Both the petitioner and his son were required by the bank to sign continuing guarantees in both the years 1943 and 1944 of the obligations of the Enoch Packing Compan to the bank. The son had, prior to the execution of the contract, been given authority to draw checks on the bank account of the business for payment of its obligations, and during the years here involved signed more than 1,500 checks against such account. The services of petitioner's son were vital in the carrying on of the business of the Enoch Packing Company. He was responsible for the rebuilding and re-equiping of the plant. Much of the equipment had to be custom made and was furnished by the makers in accordance with plans which he had devised for the better performance *113 of the various operations of the plant. He also purchased and signed orders for the supplies necessary for use in the plant and had entire supervision of the hiring, firing and superintendence of all personnel employed there and on the ranches. Following the execution of the contract between the petitioners and their son, the business of the Enoch Packing Company increased materially. It became recognized as a business which produced a product of high quality, approximately 90 per cent of which was sold to large baking companies exceptionally careful as to the quality of the product they purchased. Many of them maintained laboratories for the testing of the raisins delivered. The raisins produced and packed in a plant such as that of Enoch Packing Company are of good or bad quality, depending upon the care and expert knowledge exercised in the various operations from the growing of the grapes through the harvesting, dehydrating, bleaching, cleaning, stemming, and packing. All of these operations were under the direction of petitioner's son. At the time that petitioner's son completed his college education and entered the business as an employee, devoting all his time to its affairs, *114 the business was operating five small grape ranches of 85 acres in all. In the case of four of these, each of 20 acres, title was held either in the name of the petitioner Charles J. Enoch or in the joint names of the two petitioners. The remaining tract of five acres was the property of the petitioner Mary Enoch and acquired by her by gift or devise. Subsequent to this time and prior to the execution of the contract in question, the two petitioners acquired, as joint tenants, an additional ranch of 76 acres, making the holdings used in the business a total of 161 acres. A few months after the execution of the contract and prior to petitioner's son having accumulated any earnings thereunder, an additional 40 acres were acquired by petitioner Charles J. Enoch, increasing the total holdings to 201 acres. Following this and during the period here in question, and subsequent to the execution of the contract, there were three large ranches acquired, two of them of 160 acres each and the third of 240 acres. In the case of one of the tracts of 160 acres and the tract of 240 acres, the acquisition was by the petitioners and their son and the latter's wife. In the case of the acquisition of *115 the third tract of 160 acres, title was taken in the name of the petitioner Charles J. Enoch, due to the fact that at the time the contract of purchase was carried into effect the petitioner's son was in the military service in Japan and not available to join in the execution of the necessary documents. The son, however, was advised as to the acquisition, was familiar with the property, and approved its purchase, and the two petitioners considered him as jointly interested with them in this property. Thus the ranch holdings used in the business were increased from 201 acres to 761 acres through purchases of properties by the petitioners together with their son. No certificate under the fictitious names statute of California was ever filed by the Enoch Packing Company either before or after the execution of the contract between petitioners and their son, and not until the year 1946 was a partnership return filed. Prior to the execution of this contract, during the time when petitioner's son was admittedly an employee of the business, the compensation credited to him on the books had been taken as an expense in computing net income of the business, and the undrawn amount carried in *116 accounts payable. Following the execution of the contract, whoever was employed to keep the books of the business made no change in the method of accounting for the credits made to the son, whether as drawing account or as his percentage of net profits. These continued to be recorded as an expense, the 50 per cent of the net earnings credited to the son being designated as share of earnings. However, as of July 31, 1944, the end of the second full fiscal year following execution of the contract, this manner of recording these items was changed and the amounts standing to the credit of the son were carried to a capital account in his name and continued to be credited to such account thereafter. In each of the years the books were audited by a firm of public accountants, and the statement prepared by them was in accordance with the entries as made upon the books. Subsequent to January 1943 the petitioner signed various W-2 forms covering tax withholdings for employees and certain employer returns as "sole proprietor" of the Enoch Packing Company. In August 1946 a corporation was organized to which was conveyed 78 per cent of the assets of the Enoch Packing Company. For this property *117 the corporation issued 2,700 shares of stock having a par value of $100 per share. Sixty per cent of such stock was issued to petitioner and forty per cent to his son. This issuance of stock was reflected on the books of the Enoch Packing Company in a charge of the par value of the stock issued to each against the capital accounts of the petitioner and his son on the books of the company. After this charge the balance remaining in the capital account of petitioner on those books was $70,876.83, and the capital account of the son, $59,325.49. For the 10 years preceding those years here involved, the net income of the Enoch Packing Company as reported in petitioners' tax returns and prior to adjustment on audit, was as follows: Fiscal Year Ended
Net Income
July 31, 1933
$ 9,604.82
July 31, 1934
2,831.41
July 31, 1935
2,514.43
July 31, 1936
2,176.87
July 31, 1937
2,011.32
July 31, 1938
3,217.95
July 31, 1939
10,177.81
July 31, 1940
9,019.12
July 31, 1941
6,115.22
July 31, 1942
9,710.58
The foregoing figures for the years 1937 to 1942, inclusive, are after the deduction for compensation for service payable to Charles J. Enoch, Jr. The taxable *118 net income of Enoch Packing Company prior to any allowance of any deduction for the amounts stipulated to have been paid and representing overceiling payments for the fiscal years 1943 to 1945, inclusive, and prior to any allowance for compensation for personal services of either the petitioner or his son, was as follows: Fiscal Year Ended
Net Income
July 31, 1943
$104,357.99
July 31, 1944
245,340.41
July 31, 1945
411,069.47
July 31, 1946
90,158.96
In addition to the raisins produced by the Enoch Packing Company from its properties, it purchased raisins from other growers and in some instances paid prices therefor in excess of the legal ceilings established under the Emergency Price Control Act of 1942. These overceiling payments were in years and for amounts as follows: Fiscal year ended July 31, 1943
$ 7,807.62
Fiscal year ended July 31, 1944
26,338.34
Fiscal year ended July 31, 1945
55,583.03
For the years 1943 to 1945, inclusive, respondent has disallowed the greater portion of the payments claimed as made to petitioner's son and has treated the amounts disallowed as additional income to petitioners. The amounts claimed and allowed *119 for each year are as follows: Year
Claimed
Allowed
1943
$ 43,958.10
$3,300.00
1944
66,529.89
3,300.00
1945
209,283.10
1,375.00
For the taxable year 1946 petitioners filed a partnership return on which one-half of the profits, namely $42,973.21, was claimed as the distributive share of the son. Respondent determined that this amount constituted additional income to petitioners for said year but allowed a deduction of $1,650 as reasonable compensation for services rendered by the son during the six months of the year in which he worked. Charles J. Enoch, Jr., was in the armed forces for six months during each of the taxable years 1945 and 1946. During a portion of this service he was stationed at a camp not far from his home and had opportunities to return and assist in operations of the business. Also during his military service he was advised of and consulted with respect to matters pertaining to the business. On his return from military service he at once resumed his customary duties with the business. During his absence the business suffered materially as a result of that condition. The account of one large customer was lost because of raisins processed *120 and delivered which were not acceptable. The business sustained a substantial loss by reason of this fact and has never been able to regain the account of this former customer. The petitioners and their son agreed verbally to enter into a contract of partnership, and the contract executed was intended to create and was considered by them to have created that relationship. Following the execution of the contract the petitioners and their son operated the business of the Enoch Packing Company jointly, each contributing property and services, for their joint interest. During the years here in question the son, Charles J. Enoch, Jr., was a partner in the business, and the share of earnings credited to him represented his partnership earnings and did not constitute income to the petitioners. Opinion The primary question for determination is whether or not a genuine, bona fide partnership existed between the petitioners and their son in the operation of the Enoch Packing Company during the taxable years in question. The parties both cite and rely upon the often quoted opinion of the Supreme Court in , in its statement of the essentials *121 of a partnership: "The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits." * * * They also cite and rely upon the rule as announced in , where the court said: * * * "The question is * * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purpose for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." * * * The parties differ in the result they reach upon application of the above tests to the facts here presented. The difference arises mainly upon the question of the effect to be given to the contract executed by the parties as of January 1, 1942. Both parties are *122 in agreement with the rule that an intent to carry on business in partnership is essential to the existence of that relationship. Respondent's contention is that under the tests laid down in Culbertson case the written contract between the parties, if one exists, is a matter of primary importance in determining the existence of a partnership, and that such contract is the evidence which determines intent. He insists that, if the contract uses language expressing an intent to create a relationship other than one of partnership, such contract strips such evidence as there may be of acts consistent with the partnership relation of significance or force in determining the question of intent. Petitioner, on the other hand, contends that a written agreement by the parties must be considered in the light of the circumstances surrounding its execution and in connection with any evidence as to a verbal understanding prior to its execution and to meet which the contract was drawn. Here the contract between the parties fails to use the word partnership, but merely states that the petitioners, as parties of the first part, are the owners of the business and are desirous of securing the *123 continuance of services by the son in its operation. It provides for drawing accounts by the father and the son and the determination of profits from the operation of the business after the deduction of such accounts, and the division of such profits equally between the petitioners on the one hand and the son on the other. It is silent as to the question of a division of losses. Respondent argues that such a contract is clear on its face and shows an intent merely to create a relationship of employer and employee. He points to facts established after the execution of the contract which he contends support and confirm an intent by the contract to create merely a relation of employer and employee. He thus points out that following the execution of the contract the parties did not until 1946 file a partnership return, that they failed to file under the California fictitious names statute a certificate as to the existence of the partnership, and that the petitioner Charles J. Enoch at various times thereafter signed certain documents such as reports of employee wages withheld or employer returns as "sole proprietor." We agree with respondent that these facts do constitute evidence of *124 the nonexistence of a partnership relation, but the question remains as to their weight in the face of evidence of an intent to create such a relation and evidence showing the actual operation of the business in such manner as to indicate the intention to have been one to create a partnership. The record establishes that Charles J. Enoch, Jr., had worked in the business continuously since he was a small boy, and at the time of his graduation from college was familiar with and for some time had been in charge of the actual operation of the grape ranches in the cultivation and harvesting, and had been actively in charge of the operation of the packing plant in the control and supervision of the personnel and facilities in the curing, processing and packing of the product as raisins. We have the sworn testimony of both father and son that at the time of the son's graduation, in accordance with the father's desire, he agreed to give up his other plans and to stay with the business, devoting to it all of his time and attention, in return for an agreement that he would, after acquiring further experience in the work, be taken into full partnership. We cannot disregard this testimony. *125 It may be self-serving, as charged by respondent, but it is perfectly reasonable. The arrangement testified to as having been entered into is one perfectly normal and customary and justified by existing circumstances both on the ground of the relationship of the parties as father and son and the fact of the son's long experience and familiarity with the work being carried on. Moreover, the existence of the arrangement is confirmed by the subsequent conduct of the parties. Following this, it is definitely established that the son devoted his entire time to the supervision of the grape ranches and the operations in the packing plant, and we are convinced from the evidence that the services rendered were of the highest quality and resulted in the improvement of the business and its product, and that at the time the contract in question was entered into the son had become indispensable to the successful operation of the business. This brings us to the period just prior to the execution of the contract. Here again we have only the testimony of the father and son that the latter called attention to the agreement made that he was to be given a full partnership, that he had performed the *126 service called for, was familiar with the work, and was married and expecting a child. They both testified that the father agreed that the time had arrived, and stated that he would have his lawyer draw a partnership contract, and that following this discussion he called his attorney and directed that such a contract be prepared. Again this testimony may be considered as self-serving, but it is also absolutely reasonable in that it evidences an agreement by the father to take a step which would be normal and logical in the course of the relationship between the parties and in the best interest of the business. The father and son testified that they called at the lawyer's office and signed the agreement prepared, but without explanation as to the technical effect of its provisions, as the latter was absent at the time. They both testified that it was their intent to form a partnership, and they assumed that the contract had this effect, and following its execution they considered themselves as partners. The failure to use the words "partner" or "partnership" is not necessarily determinative of the result, , nor do we agree with respondent's contention *127 that the decision in , must be construed as holding that the terms of the contract are determinative of the intent of the parties in its execution. We have heretofore set out the pertinent portion of the opinion of the Supreme Court in that case. The court expressly states that the result attained is to be determined upon the intent of the parties and that such intent is to be determined upon all the facts, and that there must be taken into consideration, in addition to the agreement itself, "the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent." Following the execution of the contract, the son had complete charge of operations except those of buying and selling. The operations of growing and processing the grapes and the raisins suitable for packing and sale were under complete supervision of the son. This work was that which determined and fixed both the basic cost *128 of the product and its quality, the latter of which was reflected in the price which could be obtained. During the years here involved the duties in connection with the operation of the business, including those executive in character, were divided between father and son. Over this time the business borrowed approximately $800,000 from the bank in the course of its operations, all of this being on notes signed jointly by the father and son. Both father and son advised the parties with whom the business had relations of purchase and sale and the representatives of the bank that a partnership existed between them, and this assurance was accepted and relied on by these parties. The son ordered and signed contracts for supplies and equipment for the plant. Approximately 1,500 checks on the bank account of the business were signed by the son alone, and some of the loans made by the bank to the business were on notes signed only by the son. The facts detailed above with respect to the operations of the business following the execution of the contract are of a character which necessarily carried weight in establishing a belief on the part of these individuals that they were carrying *129 on business in partnership, and such a belief of course would establish the fact of intent to create that relationship. In addition to these facts, there are others which it is difficult for us to reconcile with any other conclusion than that the father and son definitely believed themselves to be partners in carrying on the business as such. Among these are the fact that the greater portion of the earnings of the business subsequent to January 1, 1943, which under the contract were payable to the son and credited to him on the books of the business, was not drawn by him but left in the business and used by it in its operations, a large portion being invested in additional grape ranches taken in the names of the petitioners and their son and the latter's wife. No interest was paid by the business to the son for these undrawn accumulations of earnings. These facts are difficult to reconcile with the theory that such accumulations were merely the undrawn wages of an employee. They all indicate a sincere belief on the part of the parties here involved that the interest of the son under the existing arrangement was proprietary in character. It should be kept in mind that there is *130 no indication in the record of any purpose of tax saving in the arrangement effected between petitioners and their son. At the time this arrangement was entered into the Enoch Packing Company was a modest business enjoying a modest income. There is no condition here, such as has been shown to exist in many cases heretofore passed on by this Court, of a parent taking into partnership various sons and daughters for the purpose of dividing income and obtaining tax benefits. Here, although the petitioner Charles J. Enoch had a daughter, she was not included in any arrangement for participation in the business, and for the three years prior to the execution of the contract the average net income of the business was less than $9,000, which was divisible for tax purposes between the two petitioners on a community property basis. It was not until subsequent to the execution of the contract that the business of the Enoch Packing Company began to increase to a large extent. This was due to several causes, including the acquisition of additional properties and the improvement of the quality of the product, brought about largely by the very excellent work done by the son in the re-equipment *131 of the plant and its operation. Another circumstance having direct and very vital bearing on the question here presented is the fact that in 1946 the petitioners and their son organized a corporation to which was conveyed 78 per cent of the assets of the Enoch Packing Company. Sixty per cent of the corporate stock was issued to the petitioner Charles J. Enoch and forty per cent to his son. This issue was in proportion to the capital accounts standing to the credit of the father and son on the books of the Enoch Packing Company. All of these facts as here reviewed which tend to establish an understanding on the part of the individuals and an intent on their part that a partnership be created must, in our opinion, be given considerable weight in establishing such conclusion. On the other hand, the facts pointed to by respondent as negating such an understanding are relatively minor in character. The failure to file under the fictitious names statute is easily understood. Neither petitioner nor his son is a lawyer. The names of both are Enoch, and the business was the Enoch Packing Company. No certificate having been filed when it was a sole proprietorship of Charles J. Enoch, Sr. *132 , it is not difficult to understand a failure on the part of these two to recognize a necessity for such a certificate if the business became one operated by two individuals of the same name. The failure to file partnership returns following the arrangement made between petitioners and their son and the continuance by the bookkeeper to designate the share of earnings credited to the son as compensation are not sufficient facts in and of themselves to establish the nonexistence of a partnership if there is sufficient evidence that the business was being operated by the parties in their joint interest. Thus, in and , a partnership was held to exist though no partnership returns were filed and the share of earnings to one of the interested parties was treated as compensation and taken as a deduction on the returns filed by the others. The failure of the contract to provide for the participation by the son in losses of the business is not material since this may be implied from the agreement to share profits. . Moreover, his participation *133 in such liability was actual from the beginning of the relationship. He signed notes both jointly and individually for funds used in the business, and his accumulated share of its earnings was left in the business subject to its hazards. When we consider all the circumstances leading up to the execution of the contract in question, it is not difficult to see how a contract so framed could have resulted from directions given by the father to his attorney to draw a partnership contract. It must be remembered that the attorney represented the father in the matter and was protecting his interest. It was a case of a son being taken into the business and we can well see how the attorney could endeavor through the particular form of contract used to protect his client if the arrangement proved unsatisfactory and allow him to cause its termination with a minimum of loss. The attorney in question testified that he had no personal recollection of the particular directions given him by petitioner for the drawing of the contract, and although he usually did not draw a regular partnership contract in this form, he might have drawn this particular one under the conditions even if directed to draw *134 a partnership contract. Upon careful consideration of the record, it is our conclusion and we have found as a fact that the petitioners and their son agreed verbally to enter into a contract of partnership, and that the contract executed was intended to create and was considered by them to have created that relationship; that following the execution of the contract the petitioners and their son operated the business of the Enoch Packing Company jointly, each contributing property and services, for their joint interest; that during the years here in question the son, Charles J. e/noch, Jr., was a partner in the business, and that the share of earnings credited to him represented his partnership earnings and did not constitute income to the petitioners. Our conclusion that a bona fide partnership existed makes unnecessary the consideration of the alternative issue as to reasonableness as compensation, of the amounts paid or credited to petitioners' son. Respondent has, by stipulation, agreed that there was no fraud in any of the years here involved, and on brief has conceded that overceiling payments made by the Enoch Packing Company during the years 1943 to 1945, inclusive, as *135 set out in our findings, are properly to be included in the cost of goods sold for the years in which made and thus reflected in the computation of net earnings of the business. It appears that by reason of the determination by respondent of fraud under Docket No. 35264, credit for forgiveness of the tax as to the year 1943 was not allowed. On recomputation it is apparent that the stipulation that no fraud existed requires that this action be reversed. The stipulation of the parties as to other items will be given effect on recomputation. Decisions will be entered under Rule 50.